(128 App. Div. 745.)

## NEARING v. HATHAWAY.

(Supreme Court, Appellate Division, Third Department. November 25, 1908.)

1. FRAUD (§ 20*)—FRAUDULENT REPRESENTATIONS—ACTS CONSTITUTING FRAUD.

A mortgagor wrote to the mortgagee, a few days before interest fell due, asking whether it would be sufficient if the mortgagee received a check at any time during the month. The letter was delivered to a third person, who had a claim for rent against the mortgagor, or her husband, and he replied that the interest was then due and requested payment by sending a certificate of deposit to a designated place. The mortgagor subsequently wrote other letters to the third person, requesting time within which to pay the interest. These letters were not answered. The mortgagee, on the nonpayment of the interest, declared the whole debt due and foreclosed the mortgage, though, had he received the letters, he would probably have allowed the interest to run. *Held,* that the third person was not guilty of any actionable wrong towards the mortgagor, and her failure to pay the interest was not induced by the third person's conduct.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 17, 18; Dec. Dig. § 20.*]

2. FRAUD (§ 59*)—ACTIONS—DAMAGES.

Where a third person by false representations induced a mortgagor to neglect to pay interest on the debt, resulting in the mortgagee exercising his option to declare the whole debt due and to foreclose the mortgage, the damage sustained by the mortgagor was the amount of the foreclosure costs and possibly the amount paid by her to her attorney.

[Ed. Note.—For other cases, see Fraud, Dec. Dig. § 59.*]

Sewell and Chester, JJ., dissenting.

Appeal from Trial Term, Otsego County.

Action by Fannie M. Nearing against Azariah J. Hathaway. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

L. F. Putnam, for appellant.
W. H. Johnson, for respondent.

JOHN M. KELLOGG, J. J. J. Hathaway held a mortgage for $300 upon the plaintiff's house and lot, the interest payable annually and $25 of principal payable February 12, 1905, and annually thereafter, in which was the usual interest clause giving the mortgagee the right to declare the whole amount due on failure to make any payment within 30 days after it was due. The first payment of interest became due

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

February 12, 1903. February 6, 1903, she wrote the mortgagee that she did not know what day that month the interest was due, and asking him if it would be all right if she got a check to him at any time during the month. This letter was delivered by the postal authorities to A. J. Hathaway, the defendant, who swears the envelope was directed to him. He opened it and remailed it to the plaintiff, with the indorsement thereon:

"Your interest is now due. Deposit the money in the bank at Cooperstown and send me a certificate by mail to Otsdawa to A. J. Hathaway."

Upon receipt of that letter she wrote a second letter, and directed it to A. J. Hathaway, saying she was in need of money, and if he would let the interest run she would pay him interest on the interest; if not, she would get the money to him. Some time in March, not receiving a reply, she again wrote, asking him not to make her any trouble, that she would get the money to him inside of three days, and in the latter part of March or the fore part of April, not receiving a reply to this letter, she again wrote asking him not to make her any trouble, that she would get the interest money for him right along, if he required it. No reply was received. The four letters were received by the defendant. In June she was informed that the mortgage was about to be foreclosed, and she saw the attorney for the mortgagee, who told her the whole amount had become due, and served the summons and complaint in foreclosure upon her. She then saw the mortgagee, explained the situation to him, and he agreed to let the mortgage run if she would pay the interest and costs. The costs amounted to $30, and there was $18 interest due. She had the interest money, and made various efforts to raise the amount of the costs, and in August sold the property for $400, paid the mortgage and costs, and brings this action to recover damages, claiming that the property was worth to her $800, and the jury have given her $200 damages.

The plaintiff and the husband formerly lived in a house belonging to the defendant, and left it with the rent unpaid. The obligation was probably the husband's, and not hers. The defendant swears that when he received the first letter he thought it might refer to this rent matter, and therefore wrote as he did. He probably, by the plaintiff's mistake, expected to get even on the rent matter. I cannot see that the answer written by the defendant to the plaintiff put her off her guard, or led her in any way to believe that the money must not be paid according to the tenor of the mortgage. His letter demanded immediate payment, and notified her that it was past due. She did write three letters, asking for more time, which he did not answer. The mortgagee says that if he had received the letters he would have answered them, and probably would have let the interest run until fall, or perhaps a year, if he thought the security was good. The defendant swears that he had no knowledge or information with reference to the mortgage. I do not think the plaintiff has shown any actionable wrong by the defendant. If he had written, telling her the mortgage need not be paid, or if she had deposited the money in the bank pursuant to his letter, it is apparent she might have been deceived. The plaintiff understood from his letters that it was neces-

sary for her to give the matter immediate attention. When her second, third, and fourth letters remained unanswered, after the supposed mortgagee had ·demanded immediate payment, the only conclusion she could arrive at was that no change had occurred in his mind· and that immediate payment was still required. The injury alleged is not the natural or probable consequence of the defendant's acts. She neglected to make the payment demanded by him, and the demand certainly held good until some word from him indicating that a change had occurred. . She therefore acted unreasonably, and it is not probable that her action was induced by the defendant's letter, or the failure to receive replies to her other letters, but arose from her inability to pay her interest, as her supposed mortgagee had demanded it. The delays were at her risk.

If we assume that a cause of action is shown, the damages are clearly excessive. If the place was worth $800 or $600, she probably could have borrowed the money again. The only legal damage she could have sustained was the amount of foreclosure costs, which she was compelled to pay, and possibly the $25, which it is claimed is due to her attorney. It was not the natural and probable result from the defendant's acts that she would secretly sell the place for about half· of its value. Had the mortgage foreclosure proceeded to sale, her situation would have been much more favorable, as we must assume the property would have realized about its fair value.

I favor a reversal of the judgment.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur, except SEWELL, J., dissenting in opinion, in which CHESTER, J., concurs.

SEWELL, J. I dissent, upon the ground that the verdict of the jury has established the representation, falsity, scienter, deception, and injury, and the evidence in the case was sufficient to justify the submission of these facts to the jury. I think that the conduct of the defendant, in opening and answering the letter written by the plaintiff to A. J. Hathaway, was equivalent to an affirmation that he was the owner of the bond and mortgage. It was a false representation of a fact, made with knowledge of its falsity, with intention that it should be acted upon. It is equally apparent that his silence was capable of being turned into a statement that immediate payment was not required, and that he would extend the time for the payment of the interest as requested by the plaintiff. He knew that his silence would convey to her mind that impression. It is true that he was not obliged to make any representation; but, having given the plaintiff to understand that he was the owner, he was bound by every consideration of fairness and honesty, as well as by law, to answer the plaintiff's letters and tell the truth. The suppression of a fact is often equivalent to the utterance of a falsehood, and not infrequently more mischievous in its consequences.

I am also of the opinion that there was sufficient evidence to go to the jury upon the question whether the plaintiff relied upon the representations to her damage. The testimony of A. J. Hathaway was that he would have been pleased to accommodate the plaintiff, if she

had requested him to, and he had known what the situation was. "The fact of my not having heard from her, and knowing the interest was overdue and unpaid, was what caused me to put it in Mr. Haywood's hands for foreclosure. * * * I should have let it run into the fall anyway, and may be a year." I think this evidence shows that the foreclosure of the mortgage was the consequence of the statement and conduct of the defendant. The jury have so found, and I am not dissatisfied with their conclusion.

There was no objection to the evidence of damages. No exception was taken to the charge, and no request was made to charge as to the true rule or measure of damages. The plaintiff offered the best and only proof which could be made to sustain her action, and it is well settled that, where a wrong has been perpetrated, the law permits the best evidence to be given to establish the injury that the nature of the case permits.

I think the judgment should be affirmed, with costs.

CHESTER, J., concurs.